UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| LITTLE & GORGEOUS INC., *d/b/a Wild & Gorgeous and Wild & Gorgeous Transfers*, | |
| Plaintiff, | |
| v. | Civil Action No. 5:23-cv-00533 |
| WILD TRIBE SCREEN PRINTS, LLC; and ALYSSA TRINIDAD, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## COMPLAINT

Plaintiff Little & Gorgeous Inc., doing business as Wild & Gorgeous Transfers, ("Wild & Gorgeous") asserts the following claims for trademark infringement against Defendants Wild Tribe Screen Prints, LLC and Alyssa Trinidad and alleges as follows:

## INTRODUCTION

1.     Wild & Gorgeous asserts claims against Defendants for trademark infringement in violation of 15 U.S.C. § 1114 and unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A), as well as trademark infringement, unfair competition, and unjust enrichment under Texas law. Wild & Gorgeous seeks (1) actual, treble, and exemplary damages from Defendants under the Lanham Act and Texas state law, (2) injunctive relief, and (3) its attorney's fees and court costs due to the willful infringement and the exceptional nature of this case under 15 U.S.C. § 1117(a).

## SUBJECT MATTER JURISDICTION

2.     This Court has subject-matter jurisdiction over the trademark infringement and unfair competition claims pursuant to 28 U.S.C. §§ 1331 and 1338(a)–(b) as this is an action

arising under the laws of the United States and relating to trademarks. The Court has supplemental jurisdiction over the Texas state law claims in this action under 28 U.S.C. § 1367 because these claims arise out of the same transactions and occurrences giving rise to the federal Lanham Act claims and are so related to those claims as to be a part of the same case or controversy.

### PERSONAL JURISDICTION & VENUE

3.      Personal jurisdiction exists over Defendants in this District under Texas Civil Practice & Remedies Code § 17.042(1) and (2). This Court has personal jurisdiction over Defendants because they have continuous and systematic contacts with Texas, including that Alyssa Trinidad is a Texas resident, Wild Tribe is a Texas limited liability company with its principal place of business in Texas, and it regularly does business in Texas, including this District. The Court also has personal jurisdiction over Defendants because the acts that are the subject of Wild & Gorgeous's claims, including trademark infringement and unfair competition, were committed by Defendants in Texas, including within this District.

4.      Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendants reside in this District under § 1391(c).

### THE PLAINTIFF

5.      Plaintiff Little & Gorgeous Inc., doing business as Wild & Gorgeous Transfers, is a Canadian corporation with its principal place of business at 176 Maryland Ridge, Beausejour, Manitoba R0E 0C0, Canada.

### THE DEFENDANTS

6.      Defendant Wild Tribe Screen Prints, LLC is a Texas limited liability company with its principal place of business at 19161 Benton City Road, Von Ormy, Bexar County,

Texas 78073 and may be served through its registered agent, Wendy S. Howton, 19161 Benton County Road, Von Ormy, Texas 78073.

7.      Defendant Alyssa Trinidad is a Texas resident and may be served at 19161 Benton County Road, Von Ormy, Texas 78073.

### WILD & GORGEOUS'S BUSINESS

8.      Wild & Gorgeous began its business in August 2017. Wild & Gorgeous has become a well-known small business leader in the t-shirt and screen-printing industries and offers on-line retail services featuring screen print transfers, sublimation transfers, UV DTF transfers, and other related goods. Wild & Gorgeous is a woman owned business and has helped create many new products in the screen-print world through partnerships with various high-level manufacturers.



9.      Wild & Gorgeous has used the following designs in connection with the sale of its goods and services:





– 3 –

10.    Since 2017, Wild & Gorgeous has spent significant time on advertising campaigns through widespread Internet advertising, high-impact search engine optimization, and viral social media campaigns that have achieved high market awareness for Wild & Gorgeous's goods and services.

## WILD & GORGEOUS'S TRADEMARK RIGHTS

11.    Wild & Gorgeous possesses extensive valuable rights in its intellectual property and owns trademarks, which are covered by the following U.S. Trademark registrations, for selling and offering for sale goods and services in connection with its trademarks:

| Registration No. | Description | Class No. | First Use |
| --- | --- | --- | --- |
| 5,535,417 | WILD & GORGEOUS | 25 | 10/1/2017 |
| 6,910,966 | WILD & GORGEOUS TRANSFERS | 35 | 6/1/2021 |
| 6,910,968 | WILD & GORGEOUS TRANSFERS | 16 | 6/1/2021 |

(collectively, the "Marks"). Wild & Gorgeous is the owner of the Marks. Attached as Exhibits 1–3 are true and correct copies of the registration certificates for the Marks and the respective assignment, if any.

12.    Wild & Gorgeous has built substantial brand-name recognition through its use of the Marks. The Marks have been in use in commerce since at least as early as August 27, 2017 when Wild & Gorgeous first opened its Etsy account and have been in continuous and exclusive use since then.

13.    Over the years, Wild & Gorgeous has spent a significant amount of time and resources in developing its brand, products, and maintaining the goodwill it has built in the Marks and its trademark portfolio. The Wild & Gorgeous brand is readily and widely

recognized in the industry and among the consuming public. By way of example only, WILD & GORGEOUS TRANSFERS products have been sold to thousands of consumers.

## THE DEFENDANTS' INFRINGING ACTIVITIES

14.     Wild Tribe has a business establishment in this District where it offers for sale and sells infringing t-shirts and screen-transfer products and related services bearing the "Wild Tribe Screen Prints" mark in direct competition with Wild & Gorgeous.

15.     Beginning around January 26, 2021, Wild Tribe began using the "Wild Tribe Screen Prints" mark on or in connection with the sale of its t-shirts as shown below:

 

16.     Currently, Wild Tribe sells t-shirts, screen-print transfers, sublimation transfers, UV DTF transfers, and other related goods and offers online retail services for such goods.

17.     Wild Tribe has used at least the following designs in connection with offering goods and services under the "Wild Tribe Screen Prints" mark around the respective dates:

| February 6, 2021 | July 20, 2021 |
|---|---|
|  |  |

– 5 –



18. Wild Tribe is engaged in infringement via the internet, including through Facebook, TikTok, Instagram, and other social media platforms, as shown in the exemplars below in searching for Wild & Gorgeous:





19.     In addition to infringement through Facebook, TikTok, Instagram, and other social media platforms, Wild Tribe is also engaged in infringement via its website at wildtribescreenprints.com as shown in the exemplar below:



20.    Defendant Alyssa Trinidad primarily controls and operates the Website and Wild Tribe's social media platforms. Alyssa Trinidad controls the TikTok, Instagram, and Facebook pages as indicated by her posting videos of herself on the Wild Tribe accounts and her personal Facebook page. The Website and social media platforms are direct competitors with Wild & Gorgeous because their products are sold through these platforms. The Website advertises and sells the competing goods and services. Visitors to the Website can directly place orders for the infringing goods and receive delivery of the products through this process. Further, visitors may also purchase such products and services on social media platforms.

## WILD & GORGEOUS IS THE SENIOR USER

21.    Wild & Gorgeous is the senior user of the Marks.

22.    Wild & Gorgeous commenced use of the WILD & GORGEOUS mark in connection with t-shirt products as early as August 27, 2017. The WILD & GORGEOUS mark is so similar to the WILD & GORGEOUS TRANSFERS marks that Wild & Gorgeous may rely upon tacking for the priority date of the WILD & GORGEOUS mark. Further, some consumers and boutiques purchasing goods under the WILD & GORGEOUS mark are the same as those purchasing goods under the WILD & GORGEOUS TRANSFERS marks. These consumers and boutiques have also consistently followed Wild & Gorgeous on social media.

23.    Further, the goods and services are substantially identical for purposes of tacking prior use of the WILD & GORGEOUS mark onto that of the WILD & GORGEOUS TRANSFERS marks. Wild & Gorgeous was always providing online retail store services under the Marks. Further, Wild & Gorgeous naturally evolved from selling t-shirts with the transfers already pressed onto the t-shirt to selling the screen print transfers separately for consumers to then press onto t-shirts. The customers of Wild & Gorgeous are likely to link the WILD &

GORGEOUS mark for t-shirt goods into the expansion market for the screen-print transfers and online services to emanate from the same source as the t-shirts.

24.    Wild Tribe did not begin its use of their WILD TRIBE mark until after Wild & Gorgeous. Wild Tribe made no commercial use of the WILD TRIBE mark before at least January 2021 or later in connection with t-shirt products. For example, before January 2021, Trinidad sold t-shirts under the brand name "Tough Girl Tees" as shown below:

 

25.    Between Wild & Gorgeous and Wild Tribe, Wild & Gorgeous was the first to use the mark WILD & GORGEOUS mark in commerce in connection with t-shirts and then screen-printed transfer products and online retail service. Wild & Gorgeous is therefore the senior user of the Marks in connection with t-shirts and screen-printed products and online retail store services.

### THE WILD TRIBE MARK IS LIKELY TO CAUSE CONFUSION

26.    As set forth above, the Marks infringed in this case have federal registrations and over 3 years of use before Wild Tribe commenced its infringement. The Marks are inherently distinctive or, in the alternative, have acquired distinctiveness based on secondary meaning. Thus, the Marks are strong.

27.    The WILD TRIBE mark is substantially similar to the Marks. Wild Tribe named its online retail business selling screen-print transfers as "Wild Tribe." Wild & Gorgeous

markets its competing services and products as "Wild & Gorgeous Transfers." As shown in the figures above, Wild Tribe prominently displays the "Wild Tribe" mark on the infringing services and products in stylized letters and much larger font, such that "Wild" dominates over the "Gorgeous," "Transfers," or "Screen Printing" parts of the marks included at the bottom of the logos in much smaller font with different typeface. Because Defendants adopted a substantially similar mark as Wild & Gorgeous's registration, the second digit — similarity between the marks — is easily met.

28.     Defendants adopted a similar competing products and services where it uses the substantially similar mark. Both parties sell t-shirts and transfer products and offer online retail services. There is a similarity between the product sold by Wild & Gorgeous in connection with its Marks and the infringing products and services offered by Defendants in connection with "Wild Tribe."

29.     Defendants are offering for sale the infringing products and services through similar sales channels, such as social media and online. Both promote their competing products and services through advertising.

## WILD TRIBE'S BAD FAITH INTENT

30.     Wild Tribe adopted the "Wild Tribe" mark in bad faith and began copying Wild & Gorgeous's branding to deceive consumers.

31.     Wild Tribe copied Wild & Gorgeous's pink branding and other marketing materials to deceive consumers when making purchasing decisions based on the substantial similarity between the two competing products and services.

32.    As shown above, Wild & Gorgeous has consistently used pink, black, and white as the primary colors for its brand.

33.    Before at least November 6, 2022, however, Wild Tribe offered goods and services for sale on its website at wildtribescreenprints.com in substantially the following manner using cheetah print and a brownish color scheme in connection with its Wᴉʟᴅ Tʀɪʙᴇ mark:




34.    Thereafter, Wild Tribe changed its branding in 2022 to start using pink and then changed it again around November 2022 by using a different logo and then the same cheetah print but with pink and black colors:



35.     Wild Tribe changed its branding to be identical to Wild & Gorgeous's pink-and-white branding that Wild & Gorgeous had been using since 2017:



36.     Then, Wild & Gorgeous made an announcement that it would be changing its colors to pink and gold. Wild & Gorgeous did not intend to change to a pink-and-gold scheme in January 2023; instead, Wild & Gorgeous published that it was changing to a pink-and-gold scheme to determine whether Wild Tribe would similarly change to a pink-and-gold scheme.

37.     A few days after the announcement, Wild Tribe similarly began using the same pink and gold colors for its brand as shown below:



38.    Defendant Alyssa Trinidad directed Wild Tribe's change in branding as indicated in her January 31, 2023 post below. She directed Wild Tribe's decision to copy Wild & Gorgeous's brand for the intent of deceiving consumers.




39.    Wild Tribe's changes have increased consumer confusion as its social media and website now appear substantially similar to Wild & Gorgeous's website and brand.

40.    Moreover, the style that Wild Tribe typically used to market its goods and services was a rustic or country theme as indicated in the exemplar below. Wild Tribe's studio similarly changed from being rustic to more girly girl.



41.    Wild Tribe began copying certain elements of Wild & Gorgeous brand by using similar features, such as a pink background for Tik Tok videos as shown below:



42.    Wild Tribe also began copying certain content of Wild & Gorgeous, such as posting videos regarding competing products after Wild & Gorgeous:



43.    Wild Tribe copied Wild & Gorgeous's viral posts on TikTok with a frame-by-frame substantial similarity:



44.    Wild & Gorgeous began dropping presale items on "Wild Wednesday," which Wild Tribe then substantially copied by dropping presales items on "Wild Monday":



45.    Moreover, Wild Tribe copied Wild & Gorgeous's "Wild Wednesday" event. Around February 2022, Wild & Gorgeous began "Wild Wednesday" for its presales and also used "Wild Monday" on occasion. Around March 2022, Wild Tribe started using "Monday Night Madness" or "Monday Madness" for its preorder events. Around January 23, 2023, Wild Tribe changed its preorder sales to "Wild Monday." As shown below, Wild Tribe intentionally copied Wild & Gorgeous's "Wild Wednesday" preorder event:



46.    Defendant Trinidad demonstrated that she was behind Defendant Wild Tribe's use of "Wild Wednesday" for their preorders on at least one occasion in December 2022:



47.    Defendants also copied Wild & Gorgeous by discovering Wild & Gorgeous's manufacturer and then using that manufacturer to sell substantially the same products:



48.    Considering all the ways in which Wild Tribe intended to copy Wild & Gorgeous, Wild Tribe had an intent to deceive and acted in bad faith.

## ACTUAL CONFUSION

49.    Purchasers of the relevant products and services, including Wild & Gorgeous's customers, were confused by Wild Tribe's use of the "Wild Tribe" mark.

50.    For example, one of Wild & Gorgeous's customers expressly stated that "I though[t] I was ordering from you but it was from the other one" in reference to Wild Tribe:



51.    One of Wild & Gorgeous's customers stated that they were "so confused" because they "thought y'all was one in the same" in reference to Wild Tribe:



52.    Another consumer indicated that they "made a mistake" when on Wild Tribe's page because they "thought [they] were on [Wild & Gorgeous's] page for a second":



53.    Another consumer indicated that they "literally clicked on her group" in reference to Wild Tribe "thinking it was yours" in reference to Wild & Gorgeous's group and indicated that "it's hard to tell them apart" as "the only difference is one word":



54.    Another person indicated that they "saw a post w/ their [Wild Tribe's] new branding & almost thought it was you":



55.     Customers of Wild Tribe have even e-mailed Wild & Gorgeous regarding issues with their orders from Wild Tribe:



56.     Another one of Wild Tribe's customers e-mailed Wild & Gorgeous regarding an order that they had "not received" and had not received even "a confirmation number":



57.    Another one of Wild Tribe's customers e-mailed Wild & Gorgeous:



58.    Several consumers have indicated their experience of actual confusion due to Wild Tribe's infringing marks and expressed the resulting harm, including that Wild Tribe provides a lesser quality service with respect to at least fulfilment time. The instances of actual confusion increased as a result of Wild Tribe copying Wild & Gorgeous's branding, marketing, products, and designs used in connection with the Marks.

## DEGREE OF CARE EXERCISED BY CONSUMERS

59.    The consumers of the Parties' competing goods and services in the t-shirt industry do not purchase such products with a high degree of care considering, among other factors, the products at issue are relatively inexpensive.

## WILD TRIBE'S INFRINGEMENT IS WILLFUL

60.    Wild & Gorgeous's counsel provided notice of the infringement on February 13, 2023. Attached as Exhibit 4 is a true and correct copy of the demand letter.

61.    Wild Tribe did not respond to the notice. Instead, on February 22, 2023, Wild Tribe filed a petition refusing to modify its infringing mark.

62.    Despite the request to cease sales of the infringing goods and services, knowledge of Wild & Gorgeous's federal registration of its WILD & GORGEOUS and WILD & GORGEOUS TRANSFERS marks and use by Defendants of a substantially similar mark to sell a competing product, Defendants continue to offer for sale and sell the infringing goods and services as of the filing of this lawsuit. Defendants' behavior demonstrates its total disregard for Wild & Gorgeous's trademark rights.

63.    On information and belief, Defendants were aware of Wild & Gorgeous products and services before launching its competing "Wild Tribe" products and services.

64.    Considering all circumstances, Defendants are willful infringers, entitling Wild & Gorgeous to exemplary damages; and this case is an "exceptional case" under the Lanham Act entitling Wild & Gorgeous to its attorney's fees and costs.

### IRREPARABLE HARM

65.    Unless Defendants are enjoined, Wild & Gorgeous will suffer irreparable harm. Defendants will continue to trade on the goodwill Wild & Gorgeous has built in its Mark. Defendants will profit unfairly from their trademark infringement, unfair competition, and other wrongs. Defendants will continue to use Wild & Gorgeous's Mark on product packaging, social media marketing, and on the Website. Moreover, Wild & Gorgeous has no ability to control the quality of the product or services provided by Defendants in conjunction with the Marks, and therefore, is at risk of irreparable harm for which there is no remedy at law and for which money damages cannot repair.

66.    Further, upon information and belief, Defendants Wild Tribe and Trinidad have been directly or indirectly engaging in threatening and harassing on social media Wild & Gorgeous, its employees, its staff, and its agents, including posting TikTok videos and

inciting others to post videos regarding Wild & Gorgeous (such as @karmaghost69) and resulting in Defendants' followers commenting on Wild & Gorgeous's videos harassing statements (such as being "the biggest bully").

67.     By way of example, if customers of Defendants experience inferior goods or services, they have and likely will mistakenly attribute that bad experience to Wild & Gorgeous due to Defendants' adoption of the same mark. This is heightened by Defendants' provision of the same or similar products to the same customer base using the same distribution channels and similar advertising.

## CAUSES OF ACTION

### COUNT I
### TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

68.     Wild & Gorgeous incorporates by reference the allegations in Paragraphs 1-67 above.

69.     Defendants have used and are continuing to use Wild & Gorgeous's Marks in commerce, without authorization from Wild & Gorgeous, in violation of 15 U.S.C. § 1114. As established by the registrations of the Marks, the Marks are protectable and enforceable against Defendants, Wild & Gorgeous is the owner of the Marks, and Wild & Gorgeous is the senior user of the Marks. Moreover, Defendants' actions have caused a likelihood of confusion in the marketplace and damage to Wild & Gorgeous. Specifically, through the infringing use of the Mark, Defendants are harming Wild & Gorgeous and possibly diverting sales that would otherwise go to Wild & Gorgeous. Defendants' use of the Marks is likely to cause confusion and mistake as to the source of Defendants' product and services.

70.     Defendant Alyssa Trinidad is also vicariously liable for the trademark infringement of Wild Tribe because she and Wild Tribe have an apparent or actual partnership

or exercise joint control over the infringing products and services. Defendant Alyssa Trinidad is also secondarily liable for contributory infringement because she intentionally caused or knowingly facilitated the infringement of Wild & Gorgeous's marks by Wild Tribe.

71.    In accordance with 15 U.S.C. § 1116, Defendants should be preliminarily and, upon hearing, permanently enjoined from using the Marks and any confusingly similar variation thereof, alone or in combination with other words, as a trademark or otherwise, to market, advertise, or identify Defendants' competing goods and any other goods that are not genuine Wild & Gorgeous goods or services.

72.    Under 15 U.S.C. § 1117(a), Wild & Gorgeous is entitled to recover from Defendants: (i) Defendants' profits and (ii) the costs of this action. Due to the knowing, intentional, and purposeful nature of Defendants' conduct, Wild & Gorgeous seeks to treble the amount of its actual damages. Due to the exceptional nature of this case, Wild & Gorgeous also seeks its reasonable attorney's fees and costs.

COUNT II
UNFAIR COMPETITION (15 U.S.C. § 1125(a))

73.    Wild & Gorgeous incorporates by reference the allegations in Paragraphs 1-72 above.

74.    Defendants' acts committed in the course of interstate commerce constitute materially false and misleading misrepresentations of fact with respect to the affiliation, sponsorship, and approval of Defendants' goods or services in violation of 15 U.S.C. § 1125(a)(1)(A).

75.    Defendant Alyssa Trinidad is also vicariously liable for the unfair competition of Wild Tribe because she and Wild Tribe have an apparent or actual partnership or exercise joint control over the infringing products and services. Defendant Alyssa Trinidad is also

secondarily liable for contributory infringement because she intentionally caused or knowingly facilitated the unfair competition of Wild & Gorgeous's marks by Wild Tribe.

76.    In accordance with 15 U.S.C. § 1116, Defendants should be preliminarily and, upon hearing, permanently enjoined from using the Marks and any confusingly similar variation thereof, alone or in combination with other words, as a trademark, or otherwise, to market, advertise, or identify Defendants' competing goods and any other goods that are not genuine Wild & Gorgeous goods or services.

77.    Under Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), Wild & Gorgeous is entitled to recover from Defendants: (i) Defendants' profits and (ii) the costs of this action. Due to the knowing, intentional, and purposeful nature of Defendants' conduct, Wild & Gorgeous seeks treble the amount of its damages. Due to the exceptional nature of this case, Wild & Gorgeous seeks its reasonable attorney's fees and court costs.

## COUNT III
### TRADEMARK INFRINGEMENT (TEXAS LAW)

78.    Wild & Gorgeous incorporates by reference the allegations in Paragraphs 1-77 above.

79.    As established above, Wild & Gorgeous is the senior user of its Marks and enjoys priority over Defendants. Wild & Gorgeous's substantial use of the Marks in commerce has resulted in the Marks being protectable and enforceable. Defendants' use in commerce of the Marks in connection with competing goods and services constitutes infringement of Wild & Gorgeous's common-law rights to its Marks. Further, as established above, Defendants' use of the Marks is likely to cause confusion or mistake as to the source of Defendants' goods or services.

80.    In accordance with Texas law, Defendants should be preliminarily and permanently enjoined, upon hearing, from using the Marks and any confusingly similar variation thereof, alone or in combination with other words, as a trademark, or otherwise, to market, advertise, or identify Defendants' competing goods and any other goods that are not genuine Wild & Gorgeous goods or services.

81.    Wild & Gorgeous has been damaged by Defendants' actions. Under Texas law, Wild & Gorgeous is entitled to recover its actual damages caused by Defendants' trademark infringement and exemplary damages due to the knowing, willful, and intentional nature of Defendants' actions.

### COUNT IV
### UNFAIR COMPETITION (TEXAS LAW)

82.    Wild & Gorgeous incorporates by reference the allegations in Paragraphs 1-81 above.

83.    As set forth above, Defendants have engaged in commerce in the State of Texas and this judicial district by marketing, offering to sell, and selling Defendants' competing goods that infringe Wild & Gorgeous's Mark. Defendants have advertised their competing goods on their active Website as well as in brick-and-mortar retail stores. Defendants have competed unfairly in violation of Texas law by misrepresenting or misleading the public to believe that their goods are sponsored by, approved by, affiliated with, associated with, or originated by Wild & Gorgeous.

84.    In accordance with Texas law, Defendants should be preliminarily and permanently enjoined, upon hearing, from using the Marks and any confusingly similar variation thereof, alone or in combination with other words, as a trademark, or otherwise, to

market, advertise, or identify Defendants' competing goods and any other goods that are not genuine Wild & Gorgeous goods or services.

85.    Wild & Gorgeous has been damaged by Defendants' actions. Under Texas law, Wild & Gorgeous is entitled to recover its actual damages caused by Defendants' unfair competition and exemplary damages due to the knowing, willful, and intentional nature of Defendants' actions.

## COUNT V
### UNJUST ENRICHMENT (TEXAS LAW)

86.    Wild & Gorgeous incorporates by reference the allegations in Paragraphs 1-85 above.

87.    As set forth above, Defendants have used the Marks as an integral step of Defendants' sales of their competing product. On information and belief, Defendants have received a direct pecuniary benefit from these unlawful acts. Defendants are therefore unjustly enriched to Wild & Gorgeous's detriment. As a result, Wild & Gorgeous is entitled to recover its actual damages caused by Defendants' unjust enrichment.

## DEMAND FOR JURY TRIAL

88.    In accordance with Rule 38, Wild & Gorgeous hereby demands a trial by jury on its claims alleged against Defendants.

## REQUEST FOR RELIEF

For the foregoing reasons, Plaintiff Wild & Gorgeous respectfully requests that the Court:

1.    Issue a preliminary and permanent injunction enjoining Defendants and their officers, agents, servants, employees, franchisees, if any, and attorneys, and all those persons in active concert or participation with Defendants from the acts described in this Complaint pursuant to Texas law and 15 U.S.C. § 1116;

2.    Order Defendants and their officers, agents, servants, employees, franchisees, and all those persons in active concert or participation with them, to identify all third parties to whom Defendants distributed any type of products or services using the Marks;

3.    Order Defendants and their officers, agents, servants, employees, franchisees, if any, and attorneys, and all those persons in active concert or participation with them, to identify all other websites containing the Marks;

4.    Order Defendants to provide an accounting of all sales, revenues, and profits related to Defendants' goods that infringe the Mark and that are falsely designated as being sponsored by, approved by, affiliated with, or associated with Wild & Gorgeous;

5.    Order all materials in Defendants' possession or control bearing the Marks be surrendered for destruction pursuant to 15 U.S.C. § 1118;

6.    Award Wild & Gorgeous all of Defendants' profits from the aforesaid acts of infringement and unfair competition as well as treble damages pursuant to 15 U.S.C. § 1117(a);

7.    Award Wild & Gorgeous actual and exemplary damages for Defendants' willful conduct pursuant to Texas law;

8.    Find this case to be exceptional in Wild & Gorgeous's favor and award Wild & Gorgeous its reasonable attorney's fees, costs, and expenses of this action pursuant to 15 U.S.C. § 1117(a);

9.    Award Wild & Gorgeous its costs and pre-judgment and post-judgment interest at the maximum allowable interest rate; and

10.   Grant Wild & Gorgeous such other and further relief as the Court may deem just and proper.

Dated:    April 26, 2023                    Respectfully,

**JAMES H. CREEDON**
Texas Bar No. 24092299
jhcreedon@creedon.com
**CHRISTIAN COWART**
Texas Bar No. 24105748
ccowart@creedon.com

**CREEDON PLLC**
5 Cowboys Way, Suite 300
Frisco, Texas 75034
Tel:    (972) 850-6864
Fax:    (972) 920-3290

**COUNSEL FOR PLAINTIFF**
**LITTLE & GORGEOUS INC.**